# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:19-cv-00044-MR

| | |
|---|---|
| EDWARD WILLIAMS, III, | ) |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| FNU SICIAK, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment. [Doc. 40].

## I. PROCEDURAL BACKGROUND

Pro se Plaintiff Edward Williams, III ("Plaintiff"), is a North Carolina inmate currently incarcerated at Pender Correctional Institution in Burgaw, North Carolina. Plaintiff filed this action on April 18, 2019, pursuant to 42 U.S.C. § 1983, against Defendants Susan White, identified as the Superintendent of Alexander Correctional Institution ("Alexander"); FNU Siciak,[1] identified as the Blue Unit Manager at Alexander; Thomas M. Moore, identified as a correctional officer at Alexander; and "John Doe," identified as

---
[1] Documents filed by Defendant Siciak reflect that his true full name is Arthur Siciak. [Doc. 42-1]. The Court will instruct the Clerk to update the docket accordingly.

a correctional officer at Alexander. [Doc. 1 at 2-3]. Plaintiff claimed that Defendants used excessive force and were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment in forcing Plaintiff to be handcuffed behind his back despite Plaintiff's pre-existing medical condition that rendered him physically unable to do so and by denying Plaintiff medical care after the incident.[2] [Id. at 3]. Plaintiff's claims survived initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A. [Doc. 10].

Defendant Siciak, who was sued in his individual capacity only, timely filed an executed waiver of service. [Doc. 13; Doc. 1 at 2]. On September 8, 2020, after proper notice, the Court dismissed Defendants White, Moore, and Doe without prejudice for Plaintiff's failure to timely serve these Defendants. [Doc. 35]. On November 16, 2020, Defendant Siciak moved for summary judgment. [Doc. 40]. In support of his motion, Defendant submitted a memorandum, an affidavit, Plaintiff's offender information sheet, Alexander's Restraint Procedures Policy, and Plaintiff's Medical Duty Status form. [Docs. 41, 42, 42-1 to 42-4]. On November 17, 2020, the Court

---

[2] Plaintiff also purported to bring a claim under the Fourteenth Amendment, which passed initial review but was not specifically addressed in the Court's Order. [See Doc. 10 at 6-7 n. 1]. Plaintiff, however, has abandoned this claim on summary judgment and the Court will dismiss it.

2

entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 43]. Plaintiff timely responded to Defendant's motion. [Docs. 44, 45]. Plaintiff submitted multiple affidavits; a brief; Plaintiff's physical therapy treatment notes; other medical records; the Incident Report, which included witness statements; Alexander's Use of Force Policy; what appears to be a portion of the N.C. Department of Public Safety's (NCDPS) Use of Force Policy, and Defendant's discovery responses. [Docs. 44, 44-1, 44-2, 45].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. FACTUAL BACKGROUND

The forecast of evidence in the light most favorable to the non-movant is as follows:

Plaintiff was transferred to Alexander from Marion Correctional Institution in or around February 2016 for physical therapy. [Doc. 44-2 at ¶ 1: Williams Dec.]. Plaintiff had broken his arm in 2014 and it his right elbow healed at a 90-degree angle. [Id.]. Plaintiff wore a sling with metal inserts at all times to protect his elbow. He took the sling off only to shower, to sleep, and for physical therapy. [Doc. 44-2 at ¶ 2]. Plaintiff had 10 visits with the physical therapist at Alexander between March 14, 2016 and April 13, 2016. Plaintiff had approval for his sling that expired on March 5, 2016. On Plaintiff's first visit with the physical therapist at Alexander on March 14, 2016, Plaintiff asked to renew the approval for the sling and for a second

pillow. [Doc. 45 at 2]. On April 14, 2016, after ten visits, Plaintiff "met potential" with physical therapy. The physical therapist ordered that he be discharged from care and referred Plaintiff to an orthopedist. [Doc. 45 at 12-13]. In the referral order to the orthopedist, the physical therapist noted, "Pt. has been Compliant [with] all [physical therapy] sessions & attempted all asked of him. He has very limited [range of motion] in elbow & [range of motion] causes extreme pain." [Doc. 45 at 13].

On April 27, 2016, Plaintiff remained at Alexander waiting to be transferred back to Marion after having completed physical therapy. [Doc. 45 at ¶ 4]. Defendant Siciak was employed by the NCDPS as a Correctional Officer at Alexander at the relevant times and had been employed by the NCDPS since 2007. [Doc. 42-1 at ¶ 1: Siciak Dec.]. Siciak was overseeing the operations of the Blue Unit at Alexander that day. [Id. at ¶ 4].

At approximately 10:00 a.m., a fight started in the dayroom. Inmates were told to go to their assigned cells and lockdown. [Doc. 45 at ¶¶ 4-5]. Siciak was told by floor staff that Plaintiff was involved in the fight. [Doc. 42-1 at ¶ 5]. All inmates suspected of misconduct are to be placed in restrictive housing pending an investigation. After the fight, Siciak, therefore, went to Plaintiff's cell with other correctional officers at approximately 10:05 a.m. to escort Plaintiff to restrictive housing. [Id. at ¶ 6].

6

Alexander's Custody and Operations: Restraint Procedures Policy, Section .0427 ("Restraint Policy"), governs the method of handcuffing an inmate when he needs to be let out of his cell for some reason. [Doc. 42-1 at ¶ 7]. The Restraint Policy provides that any general population inmate who must be placed in hand restraints is required to be handcuffed behind his back through the trapdoor of that inmate's cell unless there are medical restrictions that require an inmate to be handcuffed in front. [Id. at ¶ 8]. Any such medical restrictions would be noted on an inmate's HS51 medical restrictions screen in the NCDPS computer system. [Id. at ¶ 8]. If an inmate is wearing a sling, Siciak "would not order that inmate to be handcuffed behind his back." [Id. at ¶ 9]. In that case, Siciak would order the inmate to be handcuffed in front. [Id.].

When Siciak approached Plaintiff's cell, Plaintiff was sitting in a chair with his right arm in a sling. [Doc. 45 at ¶ 6]. Defendant Siciak and former Defendants Moore and Doe stood outside Plaintiff's door and asked Plaintiff to submit to handcuffs through the trapdoor, which was unlocked. [Id. at ¶¶ 6-7]. Plaintiff stood up from his chair and explained that he was not involved in the fight. Plaintiff also explained that his arm was in a sling because it "was stuck in a 90[-]degree angle and couldn't flex in a position to handcuff [Plaintiff] from the back." [Doc. 44-2 at ¶ 7]. Defendant Siciak again ordered

7

Plaintiff to turn around and submit to handcuffs. At that time, Plaintiff removed his sling and politely asked to be handcuffed in the front because his arm could not flex in a position for Plaintiff to be handcuffed from behind. [Id. at ¶ 9]. Plaintiff has presented evidence that Siciak refused. Siciak has presented evidence to the contrary, that he would not order an inmate in a sling to be handcuffed from behind. [Id.; see Doc. 42-1 at ¶ 9]. Siciak knew that Plaintiff has a serious medical condition and that he would be hurt if he was handcuffed behind his back, but Siciak ordered the officers to do it anyways. [Id. at ¶ 15]. Moore and Doe then "snatched up and twisted" Plaintiff's arms "yanking them through the high trap door" and cuffed Plaintiff. [Id.]. Plaintiff was standing on his toes "hollering in pain, as [his] right shoulder dislocated and [his] elbow popped."[3] [Id.]. Plaintiff was taken to segregation by Moore and Doe. [Id.]. Plaintiff was made to painfully strip out of his clothes. [Id.]. He noticed that his arm was swollen and asked for medical assistance, which he did not receive. [See id.]. Siciak was not involved in and did not deny Plaintiff medical care in segregation or otherwise

---

[3] Defendant has presented a forecast of evidence that "no force was required to handcuff Plaintiff behind his back through the trapdoor" and that Plaintiff showed no signs of distress and made no complaints of pain after he was cuffed. [Doc. 42-1 at ¶¶ 15-16].

and did not consciously or intentionally disregard an excessive risk to Plaintiff's medical treatment.[4]  [See Doc. 42-1 at ¶¶ 17-18].

After an investigation of the dayroom fight was conducted, including review of the video footage, Plaintiff was released from segregation.  [Doc. 44-2 at ¶ 10].  Plaintiff again complained of "extreme pain."  He was taken to medical and seen by Nurse Christina Fox.  [Id. at ¶ 10].  Nurse Fox became alarmed by Plaintiff's injuries, which appeared consistent with Plaintiff's elbow having been refractured, and sent Plaintiff to main medical.  [Id. at ¶ 10].  At main medical, Plaintiff was seen by Dr. Marta Kalinski.  [Id. at ¶ 11]. In the record for this visit, Dr. Kalinski noted Plaintiff's subjective complaints:

> Patient sustained trauma to his right upper extremity during placement of handcuffs.  Patient came to Alexander for R-elbow [physical therapy]. In 01/2014 patient sustained fracture to his R-elbow.  After fracture, he did not have cast or surgical repair. Patient developed R-elbow [range of motion] limitation and progressive arthritis.  His R-elbow became permanently locked at 130 degrees.  Patient did not benefit from [physical therapy] and his current plan was to be evaluated for corrective surgery at [Central Prison]-Ortho.

---

[4] According to NCDPS Use of Force Policy, the Officer-in-Charge, which was Captain Hamilton at the time of the subject incident, has each inmate involved in a use of force incident medically screened and determines whether imminent immediate medical attention is required.  [Doc. 45 at 36-37, 57].  Here, however, Defendant maintains that this was not a Use of Force incident and Use of Force procedures, therefore, were not followed.  [Id. at 58, 61; see id. at 59].

[Doc. 45 at 30]. Dr. Kalinski noted that Plaintiff had "diffuse swelling around elbow joint," "tenderness to even light palpation," and "totally restricted [range of motion] active and passive." [Id.]. She administered a shot of pain medication and ordered that Plaintiff be seen at an outside hospital. [Doc. 44-2 at ¶ 11; Doc. 45 at 30-32].

Plaintiff was taken to Catawba Valley Medical Center (CVMC) for examination. [See Doc. 45 at 33-35]. At the CVMC emergency room, Plaintiff reported to the provider that when he was being handcuffed "he felt like his shoulder popped out of place [and] his left arm was being twisted and he felt pain in his right elbow." [Id. at 33]. Examination showed mild discomfort surrounding Plaintiff's right shoulder and some discomfort over the posterolateral aspect on his right elbow. [Id. at 34]. While X-rays of Plaintiff's right shoulder were unremarkable, Plaintiff was diagnosed with a shoulder sprain and the provider suggested that Plaintiff "certainly could have dislocated [his] shoulder and this reduced." [Id. at 34-35; see Doc. 44-2 at ¶ 12]. X-rays of Plaintiff's right elbow showed "[s]mall joint effusion with elevation of anterior fat pad." [Id. at 34]. The radiologist noted that, "[a] fracture is not confidently visualized, however, a joint effusion raise[s] suspicion for radiographically occult fracture." [Id.]. Plaintiff was provided a sling and directed to use ice compresses and take Motrin for pain. [Doc. 45

at 35]. Plaintiff was returned to Alexander the same day. [See Doc. 44-2 at ¶¶ 13-14].

## IV. DISCUSSION

### A. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials

11

applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Here, the relevant forecast of evidence shows Defendant Siciak directed two correctional officers to handcuff Plaintiff in a manner that was contrary to policy and which caused Plaintiff significant pain and physical injury in the face of knowledge of Plaintiff's medical condition and with Plaintiff's arm in a sling. The forecast of evidence also shows that Plaintiff was calm, composed, and of no threat to Defendant or the other officers. As such, the manner of the use of force under the circumstances suggests that it was applied "maliciously and sadistically for the very purpose of causing harm" and not in a haste to "quell prison disturbance." Williams, 77 F.3d at 761. Moreover, while serious injury is not required to support an excessive force claim, Wilkins v. Gaddy, 559 U.S. 34, 38 (2010), Plaintiff's injuries were sufficiently serious to call into question Defendant's evidence that Plaintiff was not in distress and did not complain of being in pain after the handcuffs were applied.

As such, the Court will deny Defendant's motion for summary judgment on Plaintiff's claim based on the use of excessive force in violation of the Eighth Amendment.

## B. Deliberate Indifference

A violation of the Eighth Amendment based on the deliberate indifference to a serious medical "requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

To be found liable under the Eighth Amendment, a prison official, however, must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). Farmer, 511 U.S. 825, 837 (1994). A prison official, however, is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Farmer, 511 U.S. at 837.

Plaintiff claims that Siciak was deliberately indifferent in forcing Plaintiff

to submit to handcuffs behind his back and in the delay in medical care provided to Plaintiff after the incident. [Doc. 1 at 8-10]. As to the claim involving post-incident medical care, Plaintiff has failed to forecast sufficient evidence to survive summary judgment. The forecast of evidence shows that Siciak was not involved in the transfer of Plaintiff to segregation or in the denial of immediate medical care there. Plaintiff, however, has forecast sufficient evidence showing that Siciak "knew of and disregarded a substantial risk of serious injury" to Plaintiff in ordering that Plaintiff be handcuffed from behind given Plaintiff's medical condition. See Bane v. Virginia Dep't of Corrections, 267 F.Supp.2d 514 (W.D. Va. June 6, 2003) (finding fact issues remained on inmate's deliberate indifference claim that prison official defendant ordered inmate to be handcuffed from behind despite medical waiver requiring that inmate be cuffed in front). As such, summary judgment will be granted on Plaintiff's deliberate indifference claim based on the post-incident medical care, but not as to Siciak's order to apply restraints behind Plaintiff's back.

**C.    Qualified Immunity**

Defendant argues that he is entitled to qualified immunity. [Doc. 41 at 16-17]. Qualified immunity shields "government officials performing discretionary functions … from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

A prisoner's right to be free from the use of excessive force by a prison guard, whether resulting in serious injury or not, was clearly established well before the subject incident. See Hudson v. McMillian, 503 U.S. 1, 5-10, 112 S. Ct. 995 (1992). And "[a] prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976." Scinto v. Stansberry, 841 F.3d 219, 236 (4th Cir. 2016).

As to Plaintiff's post-incident medical care deliberate indifference claim, he has not forecasted evidence that Defendant Siciak violated a

constitutional right in the first place. As such, Siciak is entitled to qualified immunity on this claim and the Court grants summary judgment for Defendant Siciak on this ground as well.

As to Plaintiff's excessive force claim and the remaining deliberate indifference claim, Plaintiff has forecasted evidence of violations of constitutional rights. Moreover, these rights were clearly established at the time of the incident. Siciak, therefore, is not entitled to qualified immunity on these claims. Because genuine issues of material fact remain for trial in this matter, summary judgment for Siciak on Plaintiff's Eighth Amendment claim based on the use of excessive force and deliberate indifference in applying restraints is inappropriate. Summary judgment, however, will be granted on Plaintiff's Eight Amendment claim based on the alleged delay in post-incident medical care.

## V. CONCLUSION

In sum, for the reasons stated herein, the Court denies summary judgment for Defendant on Plaintiff's excessive force and deliberate indifference claims based on the application of restraints in accordance with this Order. The Court grants Defendant's motion as to Plaintiff's remaining deliberate indifference claim. The Court also dismisses Plaintiff's claim under the Fourteenth Amendment because it has been abandoned by

Plaintiff.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 40] is **DENIED IN PART** as to Plaintiff's Eighth Amendment excessive force claim and deliberate indifference claim based on the application of restraints and **GRANTED IN PART** as to Plaintiff's post-incident medical care deliberate indifference claim.

**IT IS FURTHER ORDERED** that Plaintiff's Fourteenth Amendment claim is **DISMISSED**.

The Clerk is instructed to substitute the true full name of Defendant FNU Siciak as Arthur Siciak in the docket in this matter.

**IT IS SO ORDERED**.

Signed: June 7, 2021

Martin Reidinger
Chief United States District Judge